UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN SPRAGUE,<br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br>　　　　　　　　　Defendant. | Case # 1:18-cv-666-DB<br><br>MEMORANDUM DECISION<br>AND ORDER |

## INTRODUCTION

Plaintiff John Sprague ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") that denied his application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned, in accordance with a standing order (*see* ECF. No. 10).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 6, 8. Plaintiff also filed a reply. *See* ECF No. 9. For the reasons set forth below, Plaintiff's motion (ECF No. 6) is **DENIED**, and the Commissioner's motions (ECF No. 8) is **GRANTED**.

## BACKGROUND

On January 5, 2015, Plaintiff protectively filed a Title XVI application for a period of disability and SSI, alleging disability beginning on August 5, 2013 (the disability onset date), due to: ADHD (attention deficit hyperactivity disorder), depression, headaches, asthma, high blood pressure, and carpal tunnel syndrome. Transcript ("Tr.") 295-300, 318. Plaintiff's application was denied initially on April 17, 2015, after which he requested an administrative hearing. Tr. 126-35,

138-49. Plaintiff first appeared and testified at a hearing on March 17, 2017. The March 17, 2017 hearing was adjourned for development, and the claimant was sent for a consultative examination, which he did not attend because he was incarcerated. Tr. 18. Thereafter, on August 2, 2017 and September 11, 2017, hearings were held via teleconference from Rochester, New York, before Administrative Law Judge Connor O'Brien (the "ALJ"). Plaintiff testified at both hearings and was represented by Ida M. Comerford, an attorney. Dawn Blythe, an impartial vocational expert ("VE"), testified at the hearing on August 2, 2017, and Sakinah Malik, also an impartial VE, testified at the hearing on September 11, 2017. The ALJ issued an unfavorable decision on October 3, 2017, finding Plaintiff not disabled. Tr. 18-30. On April 13, 2018, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

I. **District Court Review**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

## II. The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the

Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## **ADMINISTRATIVE LAW JUDGE'S FINDINGS**

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his October 3, 2017 decision:

1. The claimant has not engaged in substantial gainful activity since January 5, 2015, the application date (20 CFR 416.971 *et seq*.);

2. The claimant has the following severe impairments: degenerative disc disease in the lumbar spine, asthma, mood disorder, learning disorder, and attention deficit hyperactivity disorder ("ADHD") (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the seve1ity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926);

4. The claimant has the residual functional capacity to perform medium work[1] as defined in 20 CFR 416.967(c) except the claimant can tolerate occasional exposure to extreme heat, extreme cold, wetness, humidity, and air borne irritants. He can also adjust to occasional changes in work setting, and make simple work-related decisions. The claimant can interact occasionally with the public, but cannot be in proximity to children. He cannot work on the internet but can perform simple, unskilled tasks. In addition, he can work to meet daily goals, but cannot maintain a fast-paced, automated production line pace. Furthermore, he requires 3 additional, short, less than 5 minute breaks, beyond regularly scheduled breaks;

5. The claimant has no past relevant work (20 CFR 416.965);

6. The claimant was born on March 27, 1979 and was 35 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963);

7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964);

---

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work he or she determined to also be able to do sedentary and light work. 20 CFR 416.967(c).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968);

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a));

10. The claimant has not been under a disability, as defined in the Social Security Act, since January 5, 2015, the date the application was filed (20 CFR 416.920(g)).

Tr. 18-30.

Accordingly, the ALJ determined that, based on the application for supplemental security income protectively filed on January 5, 2015, Plaintiff is not disabled under section 1614(a)(3)(A) of the Act. *Id.* at 30.

## **ANALYSIS**

Plaintiff alleges a single point of error. Plaintiff contends that the ALJ erred in concluding that his intellectual impairment did not meet or medically equal Paragraph B of Listing 12.05. Plaintiff concedes that he does not meet Listing 12.05(A). However, Plaintiff argues that the ALJ's analysis pursuant to Listing 12.05B, specifically the ALJ's finding that there were no deficits in adaptive functioning pursuant to 12.05(B)(2) was not unsupported by substantial evidence. *See* ECF No. 6-1 at 5-12. The Commissioner argues in response that the ALJ reasonably found that the record as a whole did not demonstrate that Plaintiff met the requirements for this Listing. *See* ECF No. 8-1 at 12.

In order to be found disabled based on mental disability under section 12.05 of the Listing of Impairments, Plaintiff must prove: (1) that he satisfies the definition provided for in the introductory paragraph of Section 12.05; and (2) that he satisfies the criteria listed in subsection A, B, C, or D. *See* 20 C.F.R. Pt. 404, Subpart P, Appendix 1, § 12.00A; *Simmons v. Colvin*, No. 15-CV-6143, 2016 WL 3866620, at *2 (W.D.N.Y. July 13, 2016). The introductory paragraph of Section 12.05 provides that a person suffers from mental retardation if he exhibits "significantly

subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpart P, Appendix 1, § 12.05. This paragraph, also referred to as the "capsule definition," is a requirement to meeting any of the severity listings found in Section 12.05. *Simmons*, 2016 WL 3866620, at *2 (citing *Lyons v. Colvin*, No. 7:13-CV-00614, 2014 WL 4826789, at *6 (N.D.N.Y. Sept. 29, 2014). Assuming a plaintiff's intellectual deficits meet the capsule definition, he must also meet one of the four severity standards set forth in the subsections of 12.05. *Id.*, at *3.

"The term 'adaptive functioning' refers to the individual's progress in acquiring mental, academic, social and personal skills as compared with other unimpaired individuals of his/her same age." *Id*. A deficit in adaptive functioning "denotes an inability to cope with the challenges of ordinary everyday life." *Id*. (citing *Novy v. Astrue*, 497 F.3d 708 (7th Cir. 2007); *see also Talavera*, 697 F.3d at 153 (citing *Novy v. Astrue*, 497 F.3d 708 (7th Cir. 2007)). Factors considered in evaluating a claimant's adaptive functioning include communicating and socializing with others, living on one's own, paying bills, caring for children, shopping, cooking, cleaning, driving and other activities of daily life. *See Newell v. Colvin*, No. 15CIV7095PKCDF, 2017 WL 1200911, at *4 (S.D.N.Y. Mar. 31, 2017) (citing *Hooper v. Colvin*, 199 F. Supp. 3d 796, 811 (S.D.N.Y. 2016)). Thus, Listing 12.05(B) requires all of the following:

1. Significantly subaverage general intellectual functioning evidenced by a or b:

a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or

b. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

a. Understand, remember, or apply information (*see* 12.00E1); or

b. Interact with others (see 12.00E2); or

c. Concentrate, persist, or maintain pace (*see* 12.00E3); or

d. Adapt or manage oneself (*see* 12.00E4); and

3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05(B).

Plaintiff contends that the ALJ's analysis failed to discuss pertinent information which tended to show that Plaintiff had more serious limitations, and therefore, did not comport with the framework of the Listing. *See* ECF No. 6-1 at 9. Plaintiff further argues that the ALJ's finding was not supported by the totality of the evidence with respect to Plaintiff's deficits in adaptive functioning. *Id*. at 12. For the reasons set forth further below, the Court finds the ALJ's decision was reasonable and supported by substantial evidence, and Plaintiff's argument is without merit.

With respect to the paragraph A criteria of listing 12.05, the ALJ determined that the criteria "are not satisfied because [Plaintiff] does not have a significant subaverage general intellectual functioning." Tr. 23. The ALJ noted that Plaintiff underwent IQ testing in 1990 (at age 11), which yielded a Verbal IQ score of 68, a Performance IQ of 81, and a Full Scale IQ of 72. Tr.

23 (citing Tr. 350). At that time, Cheryl A Pfund, M.A. ("Ms. Pfund"), a certified psychologist, noted that Plaintiff was classified as emotionally disturbed and placed in special education. Tr. 351. She stated that Plaintiff was functioning in the borderline to average range of intelligence with non-verbal skills better developed than verbal skills. Tr. 352. She noted his interactions with peers and adults tended to be inappropriate and recommended continued special education support. Tr. 352. As the ALJ noted, since that time, there has been no standardized testing showing significant deficits in adaptive functioning. Tr. 23.

At his first hearing, Plaintiff testified that he had taken care of his ill father, including dealing with insurance company paperwork for his father. Tr 69-70. One counselor noted that Plaintiff was an "excellent navigator "of the health care system on behalf of his father. Tr. 447. Plaintiff also testified he published a book of poetry. Tr. 70, 446. He also earned a degree in cosmetology from the Continental School of Beauty ("Continental"), which he was able to complete notwithstanding that he had been incarcerated about two months. Tr. 22, 72-73. With respect to testing, Plaintiff testified that he did a lot better with hands-on testing than book testing. Tr. 74. However, as the ALJ noted, Plaintiff had taken 100 written examinations at Continental, earning an average grade of 81.94. Tr. 22 (citing Tr. 348). Plaintiff stated he is working on his GED and going to church while he is in jail. *Id*. He also testified that he is trying to get his credit back to normal so that he and his father can purchase the building they live in. Tr. 77.

He is able to use a computer (Tr. 88) and was completing employment applications from his computer until at some point his computer broke down (Tr. 79). Plaintiff testified that he is able to get around by public transportation (Tr. 81) and has no problem taking care of his personal hygiene (Tr. 86). He also enjoys cooking and stated he was able to find a recipe and cook orange and sage chicken. *Id*. He also cooks for his family. Tr. 82. In one progress note, Plaintiff is

described as "an avid cook." Tr. 447. He stated he did all the cooking and the grocery shopping when he was living with his father (Tr. 85) and also remodeled his house with the landlord's permission (Tr 82). He also had plans to marry his partner, but both ended up in jail, so his plans for marriage are on hold. Tr. 89.

He was able to obtain a student loan but not able to pay it back. Tr. 90. He testified that other than his book publishing, no one has bilked him out of any money. Tr 92. He is able to make change and can calculate what is due to him on a sheet of paper. *Id*. He is also able to budget his money and was able to pay his father's bills. Tr. 93, 94. He also testified he was able to help his dad with financial issues related to his dad's medication. Tr. 46. Plaintiff testified he could read a newspaper and do basic math such as adding and subtracting, but he has a harder time with multiplication and division. Tr. 112, 113. He testified that he writes a lot while incarcerated, writing up to three to four hours a day (Tr. 87), and he likes to read mysteries by Nora Roberts and James Patterson (Tr. 42). The most recent book he read was "City of Bones" by Michael Connelly. *Id*. In response to his attorney's question regarding his ability to concentrate and focus, Plaintiff testified it was "all right, but it is not the greatest." Tr. 55. He also testified he was able to focus on the last book he read, "City of Bones," reading four short chapters in an hour and a half. Tr. 56.

Plaintiff was examined by Michael Alexander, Ph.D. ("Dr. Alexander"), in March 2008. in relation to a previous application for benefits. Tr. 548-51. Dr. Alexander estimated Plaintiff's intellectual functioning was below average. Tr. 550. He diagnosed depressive disorder controlled by medication, and cannabis abuse. Tr. 550. Dr. Alexander opined Plaintiff could follow and understand simple instructions, perform simple tasks independently, maintain attention and concentration, and maintain a regular schedule. Tr. 550. He indicated Plaintiff could learn new tasks, make appropriate decisions of a limited nature, relate adequately with others, and

appropriately deal with limited amounts of stress. *Id*. Dr. Alexander thought that Plaintiff could perform more complex tasks, but he would need close supervision due to limited intellectual ability. *Id*. Dr. Alexander recommended vocational evaluation and training but did not think Plaintiff could manage his own funds due to his drug use. Tr. 551.

In December 2014, Plaintiff started seeing providers at Spectrum Human Services, for complaints of depression, help coping with his ill father, and his desire to get Social Security disability. Tr. 443. In February 2015, therapist Joan Rummell ("Ms. Rummell") noted that Plaintiff was taking good care of himself by getting enough rest, eating well, and talking to his doctor about his medication. Tr. 444. In May 2015, Plaintiff told Ms. Rummell that his application for Social Security benefits had been denied, and he was thinking of moving to Florida to find a job. Tr. 450. Plaintiff reported he was discouraged by his lack of job opportunities in New York because he had to register as a sex offender. Tr. 450. Ms. Rummell noted that Plaintiff had been exercising and making social plans for the summer, and she recommended he continue writing. Tr. 451. The following month, Plaintiff again expressed frustration about recent job searches due to his felony status and stated he was thinking of moving out of state and taking some courses online for his high school diploma. Tr. 451. In July 2015, Plaintiff discussed his planning for an upcoming Fourth of July party. Tr. 457. Later that summer, Ms. Rummell noted Plaintiff was enjoying the process of planning to buy real estate and had applied for two jobs. Tr. 459 Throughout 2016, Plaintiff continued to see Ms. Rummell, as well as another clinician, Holli Gass ("Ms. Gass"). Tr. 478-79, 487, 489, 500, 503. In September 2016, Ms. Gass recorded examination findings that included coherent thought, normal speech, good attention and concentration, adequate fund of knowledge, intact memory, and good insight and judgment. Tr. 503.

Plaintiff underwent another consultative examination related to his current application for benefits in March 2015, with Christine Ransom, Ph.D. ("Dr. Ransom"). Tr. 387-90. Plaintiff reported he was in special education classes due to ADHD and a learning disability and had never worked. Tr. 387. It was noted that Plaintiff's adaptive functioning was in the low average range. Tr. 389. No limitation was noted in understanding simple directions and instructions, performing simple tasks independently, maintaining attention and concentration for simple tasks, maintain a simple regular schedule and learning simple new tasks. *Id*. The examiner noted Plaintiff would have mild difficulty in performing complex tasks, relating adequately with others and appropriately dealing with stress. Tr. 389-90. He opined that Plaintiff's mild psychiatric condition would not significantly interfere with his ability to function on a daily basis. Tr. 390.

Ms. Gass completed a questionnaire in March 2017, wherein she noted that Plaintiff would like to work, but he struggled to find the ambition/self-esteem to do so. Tr. 542. She noted that Plaintiff was "considering [the] PROS day program to work on employment readiness." Tr. 542. Ms. Gass remarked that Plaintiff had a history of a learning disorder, was a registered sex offender, and struggled to interact socially, and recommended that Plaintiff consider a program to improve his employment and social skills. Tr. 545. Ms. Gass opined that Plaintiff would be off task 25 percent of the time and would miss work about two days per month. Tr. 545-46.

In the section of the check-list form labeled "Mental Abilities and Aptitudes Needed To Do Unskilled Work," Ms. Gass stated Plaintiff had a category II limitation (precludes performance for less than 10 percent of an eight-hour workday) in: handling very short and simple instructions; maintaining attendance; sustaining an ordinary routine; working with others; making simple decisions; being aware of normal hazards; and setting goals and making plans. Tr. 544-45. She stated Plaintiff had a category III limitation (precludes performance from 11 to 20 percent of an

eight-hour workday) in: maintaining attention; completing a normal workday and work week; working with supervisors; getting along with co-workers; and responding appropriately to changes. *Id*. Ms. Gass opined that Plaintiff had a category IV limitation (preclude performance for more than 20 percent of an eight-hour workday) in: handling detailed instructions, performing at a consistent pace, interacting with the public, traveling to unfamiliar places, and dealing with normal work stress. *Id*.

To meet or equal Listing 12.05(B), Plaintiff must demonstrate marked limitations in two categories or an extreme limitation in one. Based on the record before the Court, the ALJ reasonably found that Plaintiff had moderate limitations in three categories and a mild limitation on one category, and the record as a whole demonstrated that the ALJ's finding was supported by substantial evidence. With respect to the first 12.05(B) category, understanding, remembering, or applying information, the ALJ found Plaintiff had mild limitations. Tr. 22. This category refers to the abilities to learn, recall, and use information to perform age-appropriate activities. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(E)(1). As outlined above, the medical evidence, including the assessments of Dr. Alexander (Tr. 549-50), Dr. Ransom (Tr. 388-89), and Ms. Gass (Tr. 544-45), which recorded essentially normal mental status findings, supported the ALJ's finding that Plaintiff could learn, recall and use information to perform age-appropriate activities. Furthermore, Plaintiff's activities—cooking and preparing meals (Tr. 81, 389, 393, 447, 502); attending doctor's appointments (Tr. 367-85, 400-37, 442-533); writing poetry (Tr. 389, 447); reading (Tr. 42, 112-13, 389, 393, 524); caring for his elderly parents; and handling insurance matters (Tr. 45, 444, 447, 525)—also supported the ALJ's finding that Plaintiff had only mild limitations in understanding, remembering, and applying information (Tr. 22). Notably, Plaintiff finished cosmetology school, and did not get his license only because of his criminal background.

Tr. 73, 114. All these activities showed Plaintiff had the ability to learn, recall, and use information to perform age-appropriate activities.

The ALJ also properly concluded Plaintiff had a moderate limitation in the second category, interacting with others. Tr. 22. This area refers to the ability to relate to others age-appropriately at home, school, and in the community. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(E)(2). The ALJ discussed Plaintiff's status as a sex offender, as well as the evidence indicating Plaintiff struggled socially. Tr. 22 (citing Tr. 311, 398, 467). However, evidence from the examining doctors also showed that Plaintiff was socially appropriate and cooperative (Tr. 388, 549), and that he socialized with family and friends (Tr. 389, 457, 459, 464, 469, 550). Thus, there is substantial evidence to support the ALJ's conclusion that Plaintiff had a moderate, but not a marked or extreme limitation, in interacting with others.

Concerning the third category, concentration, persistence, and pace, the ALJ noted that Plaintiff reported problems with test taking but did not describe any other specific issues in concentrating, persisting, or maintaining pace. Tr. 22. This area involves the ability to focus attention on activities and stay on task age appropriately. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(E)(3). Here, the ALJ noted that Plaintiff reported problems with test taking, but he did not describe any other specific issues in concentrating, persisting, or maintaining pace. Tr. 22. The ALJ also noted that Plaintiff was able to concentrate, persist, and maintain pace well enough to read novels (Tr. 42, 112-13, 389, 393, 524); graduate from cosmetology school (Tr. 73, 114); and take care of his parents (Tr. 45, 444, 447, 525). Plaintiff also passed the time playing video games and writing poetry. Tr. 490, 503. Additionally, Plaintiff applied for jobs (although he did not get any because of his criminal background), indicating he believed he had the capability of focusing his attention on activities and stay on task. Tr. 450, 459, 469. Based on this evidence, the ALJ

13

reasonably concluded that Plaintiff had no more than a moderate limitation in his ability to concentrate, persist, and maintain pace. Tr. 22.

As for the fourth and final category, adapting or managing oneself, the ALJ properly concluded Plaintiff had no more than moderate limitation. Tr. 22-23. This area refers to the ability to regulate emotions, control behavior, and maintain well-being in age appropriate activities and settings. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(E)(4). The ALJ noted Plaintiff had appropriate grooming and hygiene (Tr. 388, 490, 503); had adequate insight and judgment (Tr. 389, 490, 524, 550); and was generally oriented (Tr. 383, 389, 490, 503, 524, 549). Moreover, Plaintiff was able to engage in normal daily activities including meal preparation, cleaning, taking the bus, and shopping. Tr. 80-81, 85, 118. Thus, the ALJ reasonably concluded this evidence showed Plaintiff had only a moderate, but not a marked or extreme limitation, in this area. Tr. 22-23.

Plaintiff argues that some evidence, such as the fact that he had not received his GED or applied for a driver's license and had difficulty with test taking and reading a clock, supports his contention that he had deficits of adaptive functioning. *See* ECF No. 6-1 at 10-11. However, as noted above, the record establishes that Plaintiff performed a wide range of activities. Thus, under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record *could* support his position. Plaintiff must show that no reasonable fact finder could have reached the ALJ's conclusions based on the evidence in record. *See Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 448 (2d Cir. 2012); *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute its own judgment even if it might have reached a different conclusion).

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 6) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 8) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE